IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICHOLAS A. EUCLIDE,

                Plaintiff,                OPINION AND ORDER

    v.

                                        22-cv-710-wmc

WISCONSIN DEPARTMENT OF CORRECTIONS,
QUALA CHAMPAGNE, JOANN SKALSKI,
DENAE SALTNESS, JOHN DOES 1–10
and ABC INSURANCE COMPANY,

                Defendants.

---

    While plaintiff Nicholas Euclide was incarcerated at St. Croix Correctional Center, correctional officer Denae Saltness coerced him into a sexual relationship. After Saltness's supervisors discovered the relationship, her employment was terminated. Saltness subsequently pleaded guilty to two counts of fourth degree sexual assault of Euclide, who then filed this lawsuit, accusing her of violating his rights under the U.S. Constitution and state law. Euclide also claims that: (1) St. Croix's Warden Quala Champagne and Superintendent JoAnn Skalski should be held liable for failing to protect him from Saltness's advances, and (2) the Wisconsin Department of Corrections ("DOC") has a duty to indemnify all three individual defendants, including Saltness, for their actions against him.

    Representing defendants Champagne, Skalski and the DOC, the Wisconsin Department of Justice has filed a motion to dismiss all of Euclide's claims against them, contending that he has failed to allege sufficient facts to support his claims against them.

(Dkt. #20).[1]  For the reasons below, that motion will be granted and Euclide's claims against Skalski, Champagne and the DOC will be dismissed.[2]

## ALLEGATIONS OF FACT[3]

Plaintiff Nicholas Euclide was incarcerated at St. Croix Correctional Center from October 2019 to February 2020.  During that time, defendant Denae Saltness, a correctional officer, befriended Euclide, flirted with him, sent him sexually explicit letters and photographs, and in December 2019, sexually assaulted him on two occasions. According to Euclide's complaint, his relationship with Saltness was discovered and investigated in "early 2020," after which he was moved from St. Croix Correctional Center to the county jail.  (Dkt. #16, ¶ 32.)  In addition, Euclide alleges "[a]t the tim[e] of the investigation, the intimate relationship between Saltness and Euclide was obvious to the many correctional staff <u>and inmates</u> at the facility who personally observed their suspicious interactions."  (*Id.* ¶ 34 (emphasis in original).)  Further, attachments to the amended complaint suggest that St. Croix Superintendent Skalski and Warden Champagne learned

---

[1] These defendants filed a motion to dismiss the original complaint earlier in the case (dkt. #13), but that motion was rendered moot in light of plaintiff's filing of an amended complaint (dkt. #16). Accordingly, this opinion addresses defendants' renewed motion to dismiss the amended complaint (dkt. #20).  In addition, defendant Saltness is representing herself and has not joined in the other defendants' renewed motion to dismiss.

[2] Although Euclide also pleaded official capacity claims against Champaigne and Skalski, he has since conceded that those claims should be dismissed (dkt. #24, at 4), so the court will not address those claims further in this opinion.

[3] The following allegations are drawn from plaintiff's amended complaint and are accepted as true for purposes of resolving defendants' motion to dismiss.  Additional allegations from the complaint are included where relevant in the opinion section.

about the relationship on March 17, 2020, from another staff member to whom Saltness had confessed. (Dkt. #16-2, at 2.) Ultimately, Saltness was terminated from her position, a PREA investigation was opened, and she was criminally prosecuted for her actions.

OPINION

Plaintiff contends that defendants Champagne and Skalski should be held liable under the Eighth Amendment for failing to protect him from defendant Saltness's sexual abuse.[4] He also contends that the Wisconsin Department of Corrections has a duty to indemnify Saltness if she is held liable for her actions.

These defendants have moved to dismiss all of these claims for failure to state a claim upon which relief may be granted. On a motion to dismiss under Rule 12(b)(6), the question is whether the plaintiff provided these defendants with fair notice of his claims, alleging sufficient facts to plausibly suggest that he is are entitled to relief against them. *McCray v. Wilkie*, 966 F.3d 616, 620 (7th Cir. 2020). The court will first address plaintiff's claims against the two individual defendants, then turn to the merits of his claim to indemnification from the DOC for any injuries caused by these defendants.

---

[4] In his amended complaint, plaintiff also claims that Warden Champagne and Superintendent Skalski failed to protect him from Officer Saltness's contacting him even after he was moved to the St. Croix County jail in February 2020. (Dkt. #16, Count V.) However, plaintiff appears to have abandoned this theory, having failed to respond to defendants' arguments that: (1) they had no knowledge of Saltness's alleged, later actions because she was no longer a DOC employee when plaintiff was at the county jail; and (2) they had no authority or control over that jail. Therefore, the court will address the only argument taken up by plaintiff in his opposition brief -- that Champagne and Skalski might have been able to prevent the sexual abuse that occurred at St. Croix Correctional Center.

3

### I.  Individual Defendants Champagne and Skalski

The Eighth Amendment requires correctional officials to protect inmates from serious harm by other inmates and prison staff. *Farmer v. Brennan*, 511 U.S. 825, 833–37 (1994).  To state an Eighth Amendment claim based on an individual prison official's failure to protect him, however, a plaintiff must allege facts suggesting that an official acted personally and with "deliberate indifference" to a "substantial risk of serious harm" to that individual.  *Id.* at 837.  This means that the plaintiff must allege the defendants were subjectively aware of, but disregarded, a serious risk of sexual assault being committed by Saltness.  *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008); *see also Hunter v. Mueske*, 73 F.4th 561, 565 (7th Cir. 2023) ("[A] prison official is liable for failing to protect an inmate … only if the official 'knows of and disregards an excessive risk to inmate health or safety'") (citations omitted).

Defendants Champagne and Skalski argue that plaintiff has failed to allege any facts suggesting that they were "subjectively aware" of any serious risk that Officer Saltness would harm him.  The court agrees.  Plaintiff only alleges that other "inmates and prison staff" had observed "suspicious interactions" between plaintiff and Saltness (dkt. #16, ¶ 34), and he argues that additional discovery *may* lead to new information that permits a reasonable inference defendants Champagne or Skalski also had their own suspicions.  However, plaintiff's speculation is *not* sufficient to state a constitutional claim against either defendant.  Indeed, according to his own allegations and documents attached to the amended complaint, neither defendant Champagne or Skalski learned about the relationship between Saltness and plaintiff or any misconduct until March 17, 2020, three

4

months *after* the sexual assaults occurred and *after* plaintiff had been transferred to the county jail. (Dkt. #16-2, at 2.) According to plaintiff's own allegations, these defendants then took immediate action upon learning of Saltness's conduct by opening a PREA investigation and terminating Saltness's employment. Nothing about those allegations permits a reasonable inference that either Champagne or Skalski consciously disregarded a substantial risk of serious harm to plaintiff. Therefore, plaintiff's claims against these individual defendants must be dismissed.

## II.  Indemnification

Plaintiff also asserts an indemnification claim against the Wisconsin Department of Corrections under Wis. Stat. § 895.46 for any judgment against defendant Saltness. That statute indemnifies public employees for liabilities incurred while "acting within the scope of [their] employment." Defendants move for dismissal of this claim on the ground that Saltness was plainly *not* acting in the course and scope of her employment during instances when she sexually assaulted the plaintiff.

An act is within the "scope of employment" if it is a "natural" or ordinary "part or incident of the services contemplated." *Martin v. Milwaukee Cnty.*, 904 F.3d 544, 555 (7th Cir. 2018) (paraphrasing Wisconsin state law). An act falling within the scope must be "so closely connected with the employment objectives, and so fairly and reasonably incidental to them, that it may be regarded as a method, even if improper, of carrying out the employment objectives." *Id.* (emphasis added). Accordingly, a court "must consider the employee's intent and purpose," keeping in mind that "[a]n act is not in the scope [of

5

employment] if it is different in kind from that authorized, far beyond the authorized time or space, or too little actuated by a purpose to serve the employer." *Id.*

Consistent with this definition, the Seventh Circuit held in *Martin* that a prison guard's rape of a pregnant inmate did not occur within the "scope of employment" for indemnification under § 895.46, because such assaults were not "natural, connected, ordinary parts or incidents of" or otherwise similar to the defendant's job of guarding inmates. *Id.* at 556. The court explained that since Milwaukee County expressly forbade sexual acts between guards and prisoners, it clearly did not contemplate sex with inmates as part of achieving its objectives in safeguarding prisoners. *Id.* at 548, 555–56; *see also Noeldner v. Taylor Cnty.*, 629 F. Supp. 3d 874, 890 (W.D. Wis. 2022) (holding that "sexual abuse of an inmate plainly fell outside the scope of her employment because [defendant's] actions could not reasonably be viewed as a means of serving any government objective, but rather as a means of serving her own personal interests.")

So, too, here. On its face, Saltness's alleged sexual misconduct was not a natural or ordinary part of her contemplated service as a corrections officer. Nor do plaintiff's allegations permit any reasonable inference that Saltness's sexual abuse fell within the scope of her employment. Rather, based on plaintiff's own allegations, her actions could not reasonably be viewed as a means of serving *any* government objective, but rather as a means of serving her own personal desires and interests. Moreover, although Saltness's actions occurred during the time and space of her employment, plaintiff does not and could not allege in good faith that her actions were natural or ordinary parts of her employment, were proper or incidental methods of carrying out employment directives or motivated by

6

a purpose of serving the State of Wisconsin. To the contrary, plaintiff instead concedes in his opposition brief that "the physical act of sexual violence justifiably falls toward serving her own objectives." (Dkt. #24, at 10.) Finally, the documents attached to plaintiff's complaint further show that Saltness attempted to conceal her actions, both by acting in secret where no cameras were present *and* by lying to investigators. (Dkt. #16-2, at 29.) Because plaintiff's allegations establish that Saltness was not acting within the scope of her employment, the state is not required to indemnify Saltness and plaintiff's indemnification claim must be dismissed.

ORDER

IT IS ORDERED that:

1) The motion to dismiss the original complaint filed by defendants Quala Champagne, JoAnn Skalski and Wisconsin Department of Corrections (dkt. #13) is DENIED as moot.

2) The motion to dismiss claims in the amended complaint filed by defendants Quala Champagne, JoAnn Skalski and Wisconsin Department of Corrections (dkt. #20) is GRANTED.

3) Plaintiff's motion to stay (dkt. #28) is DENIED.

Entered this 19th day of January, 2024.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge