IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NICHOLAS A. EUCLIDE,

                Plaintiff,

v.

DENAE SALTNESS,

                Defendant.

AMENDED
OPINION AND ORDER

22-cv-710-wmc

---

While plaintiff Nicholas Euclide was incarcerated at St. Croix Correctional Center, one of the correctional officers, Denae Saltness, had an illegal sexual relationship with him. After Saltness's supervisors discovered the relationship, her employment was terminated and she subsequently pleaded guilty to two counts of fourth degree sexual assault. Euclide then filed this civil lawsuit, accusing Saltness of violating his rights under the U.S. Constitution and state law. Specifically, Euclide claims that Saltness: (1) failed to protect him and acted with deliberate indifference toward him, in violation of the Eighth Amendment; (2) violated Wisconsin's common law against battery and intentional infliction of emotional distress.

Representing herself, defendant Saltness never filed a proper answer to plaintiff's complaint, though she did file an "Answer to Summons" (dkt. #15) early in the case, asking for time to find a lawyer and for the case to be dismissed. She also failed to file a response to plaintiff's amended complaint (dkt. #16), but did appear on behalf of herself at the May 2, 2023, telephonic scheduling conference in this case held by the Honorable Magistrate Judge Crocker. On August 23, 2024, plaintiff filed a motion for entry of default. (Dkt.

#35.) After holding a telephonic status conference on September 4, 2024, at which Saltness did not appear, the court then directed the clerk's office to enter default against her.

On October 1, 2024, the court held a default judgment hearing. Before that hearing, the court issued an order stating that it would accept the allegations of the amended complaint as true. (Dkt. #39.) Thus, the court found as true that: (1) plaintiff Euclide was an inmate at St. Croix Correctional Center (SCCC) in New Richmond, Wisconsin, from October 2019 to February 2020 (Am. Cpt. (dkt. #16) ¶ 13); (2) defendant Saltness was a DOC sergeant at SCCC at the time (*id.* ¶ 15); (3) defendant flirted with plaintiff, gave him explicit letters and photographs, and engaged in sexual acts with him twice (*id.* ¶ 16, 18, 25–26, 28); (4) plaintiff submitted to defendant's advances because he feared retaliation (*id.* ¶ 24, 36); (5) even after she was terminated from his position with DOC, defendant continued to communicate with plaintiff via video chat, letters and phone calls while plaintiff was at the St. Croix County Jail (*id.* ¶ 40);and (6) plaintiff suffered severe emotional distress and sought mental health treatment after his release (*id.* ¶ 38). Thus, the only issue for the default judgment hearing was the amount of damages, if any, that would be appropriate for the admitted violations.

Before the hearing, plaintiff had not submitted any evidence showing actual medical costs, mental healthcare costs or any other evidence of actual monetary damages incurred. He testified at the hearing that he initially enjoyed defendant's flirting and attention because he'd been in prison for almost six and a half years with no personal visits. He also testified that he was worried defendant would give him a negative evaluation, though

2

defendant never expressly threatened him. After defendant was placed on administrative leave and plaintiff was transferred to St Croix County jail, plaintiff also continued to communicate with defendant via video calls. In total, plaintiff called defendant more than one hundred times. When asked why he continued communicating with defendant, plaintiff testified that she was the only person he'd had a romantic relationship with in several years, and he considered her to be his girlfriend. However, he eventually ended his contact with defendant after he started mental health counseling at the jail and a PREA investigation was opened. Plaintiff further testified that he was relieved when the relationship ended because it had been "confusing" to have a girlfriend who was a correctional officer.

Finally, plaintiff testified that since his release in January 2021, he had difficulty trusting and communicating with women. His mother and friend also testified that plaintiff had been noticeably depressed and angry since his release from jail, which they attributed partly because he wants to be in Wisconsin, rather than North Carolina where he is living now, but also to his realization that defendant had taken advantage of him. Defendant also testified at the hearing, but her testimony was unpersuasive, as she generally denied plaintiff's allegations of a sexual relationship, and her testimony provided little insight as to an amount of damages due plaintiff.

After the hearing, plaintiff was permitted to submit mental health records showing that he was required to attend mental health therapy in December 2021, after his release from jail because he tested positive for cannabis use while on probation (dkt. #47-1). During his appointments, plaintiff described anxiety, depression, PTSD, adjustment

3

disorder and other mental health symptoms, arising from numerous traumas in his background, including past child abuse, a lengthy prison sentence, drug addiction, and being molested by a guard while in prison. (*Id.* at 29–30.) After he completed his required sessions, he chose not to return to therapy until another required appointment in April 2024, at which he denied any mental health symptoms and stated that he had "no worries." (*Id.* at 4, 12.)

The question for the court is what amount of compensatory and/or punitive damages would be appropriate for defendant's unlawful conduct. Unfortunately, neither party provided the court much assistance in making this determination. Plaintiff's counsel asked for $175,000 in damages, as well as punitive damages, at the October 1, 2024 hearing, but provided little legal or factual basis for that award. Plaintiff's primary arguments were that: (1) he is entitled to compensatory damages because he suffered extreme emotional distress as a result of defendant's actions; and (2) punitive damages should be awarded because defendant abused her position of authority over plaintiff.

The court agrees that compensatory damages are appropriate, though not in the amount requested by plaintiff. The merits of this case hinge on plaintiff's being incapable of giving legal consent to a sexual relationship because of his status as an inmate in defendant's care, which is correct as a matter of Wisconsin law, Wis. Stat. § 940.225(2)(h) (an inmate in a correctional facility cannot consent to a sexual relationship with a correctional staff member), and as a matter of common sense. Still, a violation of state criminal law, as well as the federal constitution and state laws on battery or intentional infliction of emotional distress, do not lead to an obvious compensatory award. That

4

depends on the actual damage done to the individual plaintiff. Here, plaintiff concedes that defendant did not physically coerce him or explicitly threaten him in any way, only implicitly. He also acknowledged enjoying the special attention initially, and that even after their physical separation, he sought out defendant on more than 100 occasions. While these facts distinguish this case from those in which a correctional or law enforcement officer commits a *violent* sexual assault on a person in their care, *e.g., Robinson v. Dart, et al.*, 12-cv-7266, 2017 WL 6604436 (N.D. Ill. 2017) ($100,000 settlement for nonconsensual sexual touching and excessive force by correctional officer on inmate), the long-term, psychological impact of plaintiff's unhealthy, illegal sexual relationship with an authority figure with literal control over his body cannot be discounted, nor has it likely yet fully manifested itself. Despite the court having already resolved the merits of plaintiff's claims by entering default judgment against defendant, these facts are relevant to the amount of damages plaintiff should receive.

In short, defendant groomed and manipulated plaintiff into a sexual relationship that, while relatively short-lived, lasted approximately two months and left at least some lasting emotional damage, though difficult to separate from the impact of numerous other traumas plaintiff has experienced in his life, particularly based on how little he discussed them at his therapy appointments and his decision to discontinue counseling, whether for financial or other reasons. Still, the court finds that $25,000 in compensatory damages and $50,000 punitive damages are appropriate under the circumstances to compensate plaintiff for his injuries and to deter such actions by defendant and other correctional

officers in the future.[1] Accordingly, the court will enter a total damage award of $75,000 and close this case.

ORDER

IT IS ORDERED that the clerk shall enter judgment for plaintiff Nicholas Euclide and against defendant Denae Saltness in the amount of $75,000 in damages.

Entered this 11th day of April, 2025.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

---

[1] The punitive damages would likely be higher but for this defendant's apparent limited ability to pay more and lack of any insurance to cover her misconduct.